**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

CHARLEE SANDERS,                          :

     Plaintiff,                          :

vs.                                       :        CA 16-0134-C

CAROLYN W. COLVIN,                        :
Acting Commissioner of Social Security,
                                            :

        Defendant.


## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 18 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 19 (endorsed order of reference).) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the December 5, 2016 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 18 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for (Continued)

Plaintiff alleges disability due to rheumatoid arthritis, diabetes mellitus (type II), hypertension, and obesity. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.**
>
> **2.      The claimant has not engaged in substantial gainful activity since December 7, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> **3.      The claimant has the following severe impairments: rheumatoid arthritis, diabetes mellitus type II, hypertension, and obesity (20 CFR 404.1520(c) and 416.920(c)).**
>
> .      .      .
>
> **4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> .      .      .
>
> **5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she needs a sit/stand option that allows only 4 hours standing and 4 hours sitting in a workday. She can do no climbing of ladders, ropes or scaffolds; can [perform] occasional climbing [of] stairs, stooping, kneeling, crouching or crawling; and is limited to no more than frequent handling and fingering.**
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

---

this judicial circuit in the same manner as an appeal from any other judgment of this district court.")

.     .     .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms to some degree; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In terms of the claimant's alleged rheumatoid arthritis, the medical evidence simply does not confirm the severity of symptoms that the claimant has alleged. Although she has certainly had some tenderness of her joints on physical examinations, she has had no significant synovitis of the joints, she has no edema of the extremities, she has no significant loss of motion of any joints, she has normal motor strength in the upper and lower extremities, and she has a normal gait. Exhibit 10F, p. 4 also indicates that while the claimant's fatigue is likely related to rheumatoid arthritis, her doctor noted that she had just had a baby by cesarean section one month earlier that could also result in fatigue with a one-month old at home. At her last documented visit in January 2014, the claimant actually denied having any limitation of activities, limping, morning stiffness, or weakness and she admitted that her pain was aggravated by rest and relieved by activity. The claimant's pain and other symptoms also seem to have improved with medications. In fact, the claimant admitted at Exhibit 10F, p. 4 that her knee pain had resolved entirely with her current medications and Exhibit 15F, p. 2 shows she denied any joint stiffness, weakness, limping or activity limitations. It is also significant to note that the claimant's own doctor noted at Exhibit 12F that while the claimant would have some increase of symptoms with physical activity, it would not be to such extent as to prevent adequate functioning in such tasks (i.e., walking, standing, bending, stooping, moving extremities, etc.).

The claimant also suffers from diabetes and hypertension, but these conditions seem to have improved since the claimant had her baby in 2013. In July 2013, her blood pressure was controlled at 115/79, in December 2013, it was 126/84, and at her last documented medical visit in January 2014, it was 138/96. As for her blood sugars, the claimant admitted that she has come off insulin and is only taking oral medications and her doctor noted at Exhibit 14F, p. 5 that her diabetes mellitus was "uncomplicated" with an A1C that was in the low normal range. The claimant has also required no emergency room visits or inpatient hospitalizations due to a diabetic or hypertensive crisis and she has suffered no end organ damage to date due to either condition.

The claimant is also morbidly obese. The undersigned has therefore considered Social Security Ruling 02-01p involving evaluation of obesity. This ruling observes that obesity can cause limitation of function and that an individual may have limitations in any of the exertional functions such

as sitting, standing, walking, lifting, carrying, pushing, and pulling. Obesity also may affect ability to do postural functions, such as climbing, balance[ing], stooping, and crouching.

The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

.     .     .

The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone. With regard to the claimant's weight, the undersigned is of the opinion that it contributes to her limitations in performing more than light work, climbing, kneeling, crawling, stooping, and crouching.

The undersigned also notes that despite her rheumatoid arthritis, diabetes mellitus, hypertension, and obesity, the claimant performs a wide range of daily activities, including taking care of a small child, taking her older kids to and from school, washing dishes, doing laundry, cooking, driving, shopping, visiting, and going to Bible study and church on a regular basis. Her pain and other symptoms do not appear to interfere with attention and concentration, as she handles her own finances, reads, watches television, goes to Bible study and church, shops and drives[,] and she has admitted that she is able to pay attention as long as needed.

.     .     .

As for the opinion evidence, the undersigned gives some weight to the treating physician opinion at Exhibit 12F that the claimant's symptoms do not prevent adequate functioning with regards to walking, standing, bending, stooping, moving extremities, etc. However, the statement that she would be absent from work 2 or more days per month is given no weight, as it is inconsistent with the treatment note at Exhibit 15F, p. 2 that indicates activity helps her symptoms and rest makes them worse. There is no State Agency medical doctor opinion relating to the claimant's physical impairments.

Based on all of the above, the undersigned finds the claimant has the residual functional capacity to perform light work with a sit/stand option that allows only 4 hours standing and 4 hours sitting in a workday; no climbing of ladders, ropes or scaffolds; occasional climbing [of] stairs, stooping, kneeling, crouching or crawling; and no more than frequent handling and fingering. The undersigned limited the claimant to light work and included the postural limitations due to the combination of her rheumatoid arthritis, diabetes, hypertension and obesity. The sit/stand option was included based on the claimant's testimony at the hearing that

she is up and down during the day. The handling and fingering limitations are based on the recent treatment notes at Exhibit 15F, p. 3 showing synovitis of the bilateral hands, although this was a one-time finding and earlier treatment notes actually showed her hands were normal and/or she had only mild synovitis.

**6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

.        .        .

**7.      The claimant was born on November 8, 1973 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.      The claimant has at  least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

.        .        .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational based, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as light/unskilled SVP work as a router Dictionary of Occupational Titles (DOT) #222.587-038 (3,900 jobs in the region; 300,000 jobs in the national economy) and assembler, electrical DOT #726.687-010 (1,200; 90,000); and light/semi-skilled SVP 3 work as a gate guard DOT #372.667-030 (1,700; 130,000).

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles with the exception of the sit/stand option, which the DOT does not cover but is based on the vocational expert's experience.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 7, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 22, 23, 24, 25-26, 26, 26-27, 27 & 28 (internal citations omitted; emphasis in original).)

The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2]

(per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work.

---

[2]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

*Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts

---

[3]    This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Sanders asserts three reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in failing to assign controlling weight to the opinion of the treating physician, Dr. Crisostomo Baliog; (2) the ALJ erred in acting as both judge and physician by arbitrarily submitting his own medical opinion for the opinion of a medical professional in violation of *Marbury v. Sullivan* and SSR 96-8p in finding she can perform light work; and (3) the ALJ erred in fulfilling his duty to develop the record by ordering a consultative orthopedic examination. The Court will address each issue in turn.

A.    **Opinion of Plaintiff's Treating Physician, Dr. Crisostomo Baliog**. Although it is a bit difficult to read Dr. Baliog's handwriting, it appears that on November 7, 2013 he completed a symptoms assessment form[4] and thereon indicated that he had treated plaintiff since December 14, 2012 for rheumatoid arthritis. (Tr. 409.) Baliog indicated that physical activity—such as walking, standing, bending, stooping, moving of extremities, etc.—would result in some increase in plaintiff's symptoms but

---

[4]    Plaintiff's attorneys, Gardberg & Clausen, P.C., supplied this form to Baliog. (*See* Tr. 409.)

not to such extent as to prevent adequate functioning in such tasks. (*Id.*) Baliog also opined on this form that plaintiff could not engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight-hour workday, forty hours a week, without missing more than 2 days of work per month and offered, in support of this opinion, the following: "Pt **may** have limitation on certain days when she has a flare of her arthritis." (*Id.* (emphasis supplied).)

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips, supra,* 357 F.3d at 1240 (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart,* 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.,* 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

In this case, the ALJ accorded some weight to the "physical activity/symptom" opinion offered by Dr. Baliog[5] but no weight to his suggestion that plaintiff could not engage in any form of gainful employment on a repetitive, competitive and productive basis in a normal 8-hour workday, 40 hours a week, without missing more than 2 or more days per month, etc. (Tr. 26.)

> The undersigned gives some weight to the treating physician opinion at Exhibit 12F that the claimant's symptoms do not prevent adequate functioning with regards to walking, standing, bending, stooping, moving extremities, etc. However, the statement that she would be absent from work 2 or more days per month is given no weight, as it is inconsistent with the treatment note at Exhibit 15F, p. 2 that indicates activity helps her symptoms and rest makes them worse.

(*Id.*)

This Court specifically finds that the ALJ was not required to accord controlling weight to Baliog's suggestion related to Sanders' ability to work fulltime in a competitive environment (*see* Tr. 409 (Baliog generally opined that plaintiff could not engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight-hour workday, forty hours a week, without missing more than 2 days of work per month, due to "possible" limitations "on certain days when she has a flare of her arthritis")), since that is a dispositive issue reserved to the Commissioner, *compare Kelly v. Commissioner of Social Security,* 401 Fed.Appx. 403, 407 (11th Cir. Oct. 21, 2010) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating

---

[5]      Dr. Baliog's opinion in this regard is inherently consistent (and offers further support) for the ALJ's RFC determination; therefore, in truth, the ALJ could have accorded this opinion controlling weight. However, the ALJ's failure to do so is mere harmless error.

source[.]") *with Lanier v. Commissioner of Social Security,* 252 Fed.Appx. 311, 314 (11th Cir. Oct. 26, 2007) ("The ALJ correctly noted that the opinion that Lanier was unable to work was reserved to the Commissioner.").  In addition, this Court agrees with the ALJ that Baliog's opinion in this regard cannot be "squared" with the evidence in his examination records establishing that relieving factors for plaintiff's symptoms include activity (*compare* Tr. 26 *with* Tr. 428 ("Symptom is aggravated by **rest.** Relieving factors include **activity**[.]")). *See Gilabert, supra,* 396 Fed.Appx. at 655 (good cause exists for not affording a treating physician's opinion substantial or considerable weight where the treating physician's opinion is inconsistent with his own medical records).[6] Accordingly, this Court discerns no basis for a remand for further consideration of the contents of the form Baliog completed on November 7, 2013.

> **B.      Whether the ALJ Arbitrarily Submitted his Own Medical Opinion for that of a Medical Professional in Violation of *Marbury v. Sullivan* and SSR 96-8p in Finding Plaintiff can Perform Light Work**.  Plaintiff contends that the ALJ erred in acting as both judge and physician by substituting his own medical opinion for the opinion of a medical professional to find that plaintiff can perform light work, in violation of *Marbury v. Sullivan* and SSR 96-8p. (Doc. 12, at 6.) Stated somewhat differently, it is plaintiff's position that since the ALJ rejected Dr. Baliog's opinion that she would be absent from work two days a month, and there is no other medical opinion in the record regarding her physical impairments, the ALJ "merely chose the limitations he thought to be relevant without establishing a link between the medical evidence of record and the adopted residual functional capacity." (*Id.* at 8.)

---

[6]      The ALJ's stated reason for rejecting Dr. Baliog's opinion in this regard is compelling particularly in light of the very "speculative" and "uncertain" nature of that opinion (*see* Tr. 409 (Baliog indicating only that plaintiff's rheumatoid arthritis "may" cause limitation)).

Initially, the undersigned notes that there can be no question but that in a specially concurring opinion in *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992), Senior Circuit Judge Frank Johnson emphasized that "[a]n ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians." *Id.* at 840. In support of this conclusion, Judge Johnson directly cited *Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988) for the proposition that "'[a]bsent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the [Commissioner].'" *Id.* In *Marbury*, of course, the ALJ disregarded the medical diagnoses of the plaintiff's psychogenically caused seizures as provided by his doctors, *see id.;* here, however, the ALJ readily accepted Baliog's diagnosis of rheumatoid arthritis (Tr. 22). What the ALJ did not accept was Baliog's speculative opinion that plaintiff would be absent from work two days of month, an opinion that not only invades the dispositive issue reserved to the Commissioner but, as well, that was otherwise properly rejected for the stated reason set forth by the ALJ. Accordingly, *Marbury v. Sullivan, supra*, does not control disposition of this matter.

This Court has consistently recognized that in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer v. Astrue*, 2013 WL 593497, *3 (S.D. Ala. Feb. 14, 2013) ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."), *aff'd,* 542 Fed.Appx. 890 (11th Cir. Oct. 29, 2013); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial

and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)). Therefore, plaintiff's observation that the ALJ's rejection of Dr. Baliog's "two absences" opinion somehow "divests" the record of substantial support for the RFC determination is simply incorrect. Indeed, here, the ALJ's RFC assessment, *compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)), is both "linked to" and supported by substantial evidence in the record, namely, the examination records supplied by Dr. Baliog (*see* Tr. 336-337, 342-343, 399-400, 404 & 427-429 (described more fully, *infra*)),[7] other relevant medical evidence (Tr. 280-285, 290, 294-295, 391-395 & 420-422 (described more fully,

---

[7]       This Court finds that Dr. Baliog's physical examination findings are in no manner inconsistent with the ALJ's assessment that plaintiff is capable of performing light work with a sit/stand opinion (allowing for 4 hours of sitting and 4 hours of standing in an 8-hour workday), only occasional climbing of stairs, stooping, kneeling, crouching, or crawling, and only frequent handling/fingering (*compare id. with* Tr. 24), particularly in light of Dr. Baliog's specific observation that physical activity—for instance, walking, standing, bending, stooping, moving extremities—would result in some increase in plaintiff's symptoms but not to the extent that it would prevent adequate functioning in such tasks (Tr. 409).

*infra*)), and plaintiff's various descriptions of her daily activities[8] and her ability to perform work-related activities (*see* Tr. 39-58 & 177-187). Therefore, plaintiff's second assignment of error has no merit.

**C.     Whether the ALJ Should Have Ordered a Consultative Orthopedic Examination.**  Plaintiff contends that the ALJ failed to fulfill his duty to develop the record by ordering a consultative orthopedic examination, given the severe impairments found to exist (including, rheumatoid arthritis and obesity) and the ALJ's assignment of less than controlling weight to the opinion of plaintiff's treating physician. (Doc. 12, at 9-10.) Plaintiff is certainly correct that the regulations provide for a consultative examination when additional evidence is needed that is not contained in the records of her medical sources or when there is an indication of a change in her condition that is likely to affect his ability to work, but the current severity of her impairment is not established. *See, e.g.,* 20 C.F.R. § 1519a(b)(1) & (4) (2016). However, the regulations also provide that if information sufficient to make an informed disability decision can be obtained from the claimant's treating physician and other medical sources, a consultative examination will not be necessary, *compare, e.g.,* 20 C.F.R. § 404.1512(e) ("Generally, we will not request a consultative examination until we have made every reasonable effort to obtain medical evidence from your own medical sources.") *with* 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations

---

[8]     In particular, the evidence reflects a wide range of daily activities, which include caring for her youngest child (who was 10 months of age at the time of the hearing), transporting her twin daughters to and from school, washing dishes, cooking, driving, doing laundry, shopping, visiting, and attending church and Bible study on a regular basis. (*Compare* Tr. 48-49, 50, 52 & 56-57 *with* Tr. 177-187.)

or tests.") and 20 C.F.R. § 404.1519a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."), and the Eleventh Circuit has consistently determined that an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Commissioner of Social Security,* 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted).

Here, Baliog provided numerous treatment records regarding plaintiff's rheumatoid arthritis (*see* Tr. 336-337 (physical examination on March 25, 2013, revealed full range of motion of the hands and wrists with no synovitis, decreased range of motion in the left elbow but full ROM on the right, tenderness in left shoulder and decrease in abduction of the shoulders, tenderness to palpation in the paraspinal muscle, full range of motion of the hips and knees, no effusions in the knees, edematous but no synovitis or tenderness in the ankles and feet); 342-343 (physical examination on February 1, 2013, revealed full range of motion in the hands, wrists, right elbow, right shoulder, neck, hips, hips and ankles, with no synovitis in the hands, some decreased range of motion in the left shoulder and elbow, no effusion of the knees, pitting edema in the ankles, a negative MTP squeeze test of the feet, and tenderness to palpation in the lower back); 399-400 (physical examination on May 6, 2013, revealed full range of motion of the hands/wrists, neck, hips, knees, ankles, and feet; there was decreased range of motion in the elbows with tenderness to palpation and tenderness to palpation bilaterally in the shoulders and the back paraspinally); 404 (physical examination on April 3, 2013, noted tenderness of numerous joints on range of motion testing and some mild synovitis of the hands, with a noted need for a steroid shot); & 427-429 (physical examination, on January 27, 2014, revealed synovitis of the bilateral hands "involving 3, 4 and 5 MCP and PIP as well as stiffness of left elbow[]" but no extremity edema and,

15

overall, musculoskeletal examination was normal, with a normal gait); *cf.* Tr. 212-213)),
and that evidence was certainly sufficient—particularly when combined with the other
evidence in the record (*see, e.g.,* Tr. 280-285 (on three physical examinations by Dr.
Susan L. Baker in January and February of 2013, plaintiff was noted to be in no acute
distress and during one of those examinations, on January 29, 2013, she denied any joint
pain); Tr. 290 (on January 2, 2013, plaintiff denied "any specific complaints."); Tr. 294-
295 (on examination by Dr. Baker, on December 18, 2012, plaintiff was noted to be in no
acute distress on physical examination); Tr. 391-395 (physical examination by Dr.
Christin L. Taylor on July 31, 2013, revealed no extremity edema and no problems with
the hands, knees and feet/ankles; however, limited extension of both elbows was
noted); Tr. 420-422 (physical examination by Dr. Taylor on December 16, 2013, revealed
no extremity edema); *but cf.* Tr. 301-302 (on physical examination by Dr. Baker on
December 4, 2012, plaintiff was noted to be in mild distress, with pitting edema to the
knee in the lower extremities, and was hospitalized due to "possible lupus flare[]" and
exacerbation of her blood pressure)), and plaintiff's testimony (Tr. 39-58; *see also* Tr. 177-
187 (function report and fatigue questionnaire completed by Sanders))—to make an
informed disability decision. According, this Court cannot agree with plaintiff that the
ALJ erred in failing to order a consultative orthopedic examination.

  In light of the foregoing, and because the plaintiff makes no argument that the
ALJ failed to identify other work existing in significant numbers in the national
economy that she  is capable of performing based upon the aforementioned RFC
assessment, the Commissioner's fifth-step determination is due to be affirmed. *See, e.g.,*
*Owens v. Commissioner of Social Sec.*, 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013)
("The final step asks whether there are significant numbers of jobs in the national
economy that the claimant can perform, given h[er] RFC, age, education, and work

experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Sec.,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

<u>CONCLUSION</u>

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 11th day of January, 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**